JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON, LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E. HOWELL AND EDWIN R. WALKER, VICE-CHANCELLORS.

---

HAROLD H. BAKER et al.

*v.*

JOSEPH W. BAKER.

[Decided April 1st, 1909.]

1. Where the original purchase price of land was made by contributions of complainants, and the title was taken in the name of one of them, there was as between the latter and the other contributors a resulting trust.

2. A resulting trust as between a grantee and third persons arising by implication of law is not within the statute of frauds.

3. Complainants purchased certain land, the title to which they caused to be conveyed to one of their number, who thereafter conveyed the land to his mother, who took with notice of the original resulting trust.—*Held*, that parol evidence was admissible to show the original trust, and that it existed against the mother, as to all the children but the grantor.

4. As between a grantor and grantee, parol evidence establishing a resulting trust in favor of the grantor is inadmissible as contradicting the deed.

5. Where a son holding title to certain land in trust for himself and his brothers and sisters conveyed the land to his mother by an absolute deed, such deed passed the son's equitable interest to the mother discharged of the trust, so that, on the mother's death, her husband was entitled to curtesy therein.

6. Where a deed conveying property is absolute on its face, parol evidence is inadmissible either in favor of or against the grantor or grantee or any persons claiming under either of them to establish an express trust, in the absence of fraud or mistake.

7. Where a conveyance by father to son to assist in supporting the family was a pure gift so far as the other members of the family were concerned, there was no resulting trust in favor of any of them so as to give them any interest in the property on a conveyance by the son to his mother.

Heard on bill, answer, replication and proofs.

Complainants are the heirs-at-law of Matilda Baker and the children of Matilda Baker and her husband, Joseph W. Baker, the defendant. The object of the bill is to establish that a farm in Springfield township, Essex county, and a house and lot in Orange, to both of which tracts the mother held the legal title when she died intestate, were held in trust for the complainants, and to enjoin defendant from setting up a legal title as tenant by the curtesy in either of the tracts. An account of rents received by the defendant is also sought. The Springfield farm was originally conveyed by James R. Pitcher and wife to the complainant Benjamin S. Baker, by deed dated April 1st, 1895. The deed was on its face an absolute deed, but complainants claim that the purchase-money of the farm was paid by all of the children and that the farm was held by Benjamin in trust for all. The farm was worked by the children together to support themselves and their mother, the father not living with

them, and after the purchase they built a dwelling on the farm, in which they lived, and made other improvements, costing altogether about $4,000. In April, 1901, and after this expenditure, the title to this farm was, by arrangement between Benjamin and the other children, conveyed to the mother; Benjamin contemplated marriage and the deed was made in order to avoid supposed complications or difficulties on this score. This deed was also absolute on its face, but complainants claim that the legal title was conveyed to their mother to hold for them, upon the same trusts upon which Benjamin previously held it. The mother, before her death, signed a deed to Claudius, another son, conveying the farm to him absolutely, but her husband refused to join in the deed. This deed also was absolute in form, but it is claimed that the same trust was to be continued by Claudius as holder of the legal title. The defendant denies the existence of the trusts set up by complainants, and claims that he paid a portion—$358—of the purchase-money of the farm, and the question in reference to the farm is whether the complainants have established a resulting trust arising out of the payment of the purchase-money and still existing for their common benefit.

The Orange property originally belonged to the defendant, and in April, 1906, while he was living separate from his family, and not contributing to their support, he conveyed this house and lot to his son Benjamin, by a deed absolute on its face. Complainants allege that this was conveyed to Benjamin in trust to manage it and pay over the rents for the use of the mother and her children, and that it was the intention that Benjamin should be a trustee for his mother and the children. Defendant by his answer denies the existence of any trust, or that the property was conveyed on the trusts or with the understanding alleged, and says that the conveyance was a gift, and on the consideration of love and affection for Benjamin. In his evidence on this point, however, defendant states that the conveyance was made for the purpose of helping his family, who were burdened with carrying the large purchase-money mortgages on the farm. This tract was conveyed by Benjamin to the mother at the same time the farm was conveyed to her, and

under the same circumstances. The conveyances were by separate deeds. These deeds from Benjamin to his mother were made without any knowledge on the part of the father, or any communication with him. He had not then been living with his family for some years, nor had they heard from him or about him for over two years. The question relating to this Orange property is whether any trust for the benefit of the children, as set up in the bill, and which is now acknowledged by Benjamin, has been so established by the proofs as to control the terms of the absolute deed, so far as affects the defendant claiming under it as tenant by the curtesy.

*Mr. Samuel J. MacDonald,* for the complainants.

*Mr. William A. Calhoun,* for the defendant (*Mr. Horace Stetson,* solicitor).

EMERY, V. C. (after statement).

On the proofs I conclude— *first,* that the original purchase of the Springfield farm from Mr. Pitcher was made by the contributions of all of the children to the purchase-money, and that although the title was taken in the name of Benjamin Baker, one of the children, there was, as between Benjamin and his brothers and sisters, a resulting trust, arising from this original contribution of the purchase-money. Such resulting trust as between the grantee and third person, arises by implication and operation of law, and is expressly excepted from the operation of the statute requiring written evidence of a trust. *Gen. Stat. p. 1603 § 3; Johnson* v. *Dougherty (Chancellor Green, 1867), 18 N. J. Eq. (3 C. E. Gr.) 406; Cutler* v. *Tuttle (Court of Errors and Appeals, 1868), 19 N. J. Eq. (4 C. E. Gr.) 549, 558.* The contributions by the children to the purchase-money are not to be considered as advances or gifts to the child selected to hold the legal title. The cases cited by defendant's counsel to show that written evidence is required to establish, as between the grantor and the grantee, an express trust contrary to the terms of the deed, either in favor of the grantor or not arising by operation of law,

have no application to this branch of the case, and so far as the original deed from Pitcher and wife to Benjamin Baker is concerned.

On the evidence I conclude that the claim of defendant, that he advanced part of the purchase-money, is unfounded, and that the payment was made by the children from their own money, without any contribution from defendant.

*Second.* As to the Springfield farm, I further find that after this original purchase by the children and before the conveyance by Benjamin to his mother in 1901, the children, recognizing this purchase of the farm for the common benefit and support of the family, including the mother, but not the father, worked the farm, carrying on the dairy and other business, and made improvements, including a house for the family to live in, contributing for this purpose about $4,000, and that all these contributions to this purpose were made in the belief that the farm was held in trust for them all, and I further find that the mother, who was supported by all the children, so understood the situation.

*Third.* As to this farm, I further find that the conveyance of the farm by Benjamin to his mother in 1901 was not made or intended as a gift to the mother by the children of their interest in the farm, but was intended (for reasons which all the children and the mother acquiesced in) to continue in the mother the legal title which had been in Benjamin, and for the same purpose.

So far as relates to the children other than Benjamin (the grantor in the deed to Mrs. Baker), the resulting trust, created by implication of law at the time of the original deed, still continued in their favor as against the mother, who, at the time of receiving her deed, had notice of the original resulting trust. And parol evidence is admissible to show that the resulting trust for the children existed at the time of this conveyance to the mother and that it was not terminated by the deed. This resulting trust, arising by implication of law at the time of this second deed, is excluded from the operation of the statute of frauds, equally with the first deed. Such admission of parol

evidence of resulting trust, under the proviso in the statute, does not, however, operate in favor of Benjamin, the grantor in the deed, as against his grantee.

As between a grantor and grantee, parol evidence establishing in the grantee a resulting trust in favor of the grantor himself cannot, under the statute, be admitted to contradict the deed. *Lovett* v. *Taylor* (*Vice-Chancellor Pitney, 1896*), *54 N. J. Eq.* (*9 Dick.*) *311,* and cases cited at *p. 319*. Benjamin's share or interest in the lands, as being one of the parties entitled to the benefit of a resulting trust, as contributing to the purchase-money, cannot be established by parol in contradiction of this deed. It could not have been introduced for this purpose against his mother, the grantee, during her lifetime, had she objected, nor is it now effective against the defendant, claiming as tenant by the curtesy since her death.

Benjamin's equitable interest in this farm at the time of this conveyance passed to the mother by the effect of the deed and the statute with the conveyance of his legal title. The curtesy of the husband in the Springfield farm is to be restricted so as to operate on the equitable title of Benjamin which was conveyed to his mother with his legal title, and does not extend to the equitable title of the other children, which remained in them notwithstanding the conveyance to the mother by Benjamin, their trustee.

*Fourth.* Subsequent to this conveyance by Benjamin to his mother in 1901, the children remaining on the farm (and not including Benjamin) continued the operation of the farm and dairy, contributing the proceeds to the common support and benefit of the family, and also from the proceeds of their farm paid off $1,500 of the mortgage (or mortgages) of $4,000, representing the balance of the purchase-money. This payment was made by them as the real equitable owners of the farm, discharging burdens upon the common property, and in the belief that, ultimately, after the death of the mother, the benefit of the entire payment would enure to them. They are therefore entitled, as against Benjamin and the defendant claiming the conveyance by him, to contribution toward these payments on the mortgage, and Benjamin's share conveyed to the mother is subject to such contribution.

*Fifth.* The defendant's title as tenant by the curtesy in the Springfield farm will be declared to extend only to such undivided share thereof as was equitably vested in Benjamin at the time of the deed to his mother in 1901, and to be subject to contribution for the payments subsequently made on the mortgage. The legal title of defendant as tenant by the curtesy will be declared not to extend to the equitable title of the other children in the land, and an injunction will be advised against asserting such title. The form of decree will be settled, and, if necessary after further hearing, as to the extent of Benjamin's equitable title at the time of the conveyance to his mother.

*Sixth.* I dispose of this branch of the case without considering or deciding the question raised as to the effect of the deed signed by the mother conveying the property to the son Claudius (but not signed by the husband) as being on her part written evidence of the trust now claimed. Having reached the conclusion that, in favor of all the children, except Benjamin, her grantor, the parol proof of the transaction is such as to show a trust in their favor, arising by implication of law, the question is not important. As to Benjamin's interest at the time of the deed, the statute operates not only against him, but in favor of his grantee and those claiming his share under her, and this subsequent admission not being in such legal form as to convey her estate, cannot have the effect, so far as the grantor alone is concerned, of changing the effect given by law to the deed itself.

*Seventh.* As to the *Orange* property, conveyed by defendant to his son Benjamin in 1896, and conveyed by Benjamin to his mother in 1901, the situation of the parties in reference to the admissibility of parol evidence to contradict the deeds and control the regular devolution of the legal title, including defendant's curtesy, is altogether different. This property owned by the father was conveyed absolutely to Benjamin. The purpose of it was to assist in the support of the family, and the conveyance was made to Benjamin as the oldest son and the person selected. But in the face of the absolute terms of the deed neither in favor of nor against the grantor or grantee or any

persons claiming under either of them, could an express trust be established by parol in the absence of fraud or mistake, and no resulting trust in favor of any of the children has been established. There was, as appears by evidence on both sides, a letter written by the father previous to the conveyance and relating to it, and this letter, up to two months before the hearing, was in the possession of the complainants. They have, however, failed to produce it on the hearing, not being now able to find it. There is a dispute as to the contents of the letter on the important point now in issue, whether the conveyance was only to be for the benefit of the family and that the property would be returned to him whenever he wished. The father says that it was. The letter, if produced, might have been sufficient under the statute to establish a trust to control the deed, but in the absence of the letter, the evidence, as to its contents, is not satisfactory for that purpose. It is unfortunate for complainants that they have lost this letter, and the case as to this property must be disposed of on the question whether the evidence as to this transaction shows any trust in the complainants, arising by operation of law, either upon the first conveyance by the father to Benjamin or at the time of the subsequent conveyance by Benjamin to the mother. The first conveyance being a pure gift, so far as complainants are concerned, there was no resulting trust in favor of any of them, neither was there any mistake or fraud in making this conveyance to Benjamin. Had the latter afterwards refused to use the property for the common benefit of the family, relief of some kind might possibly have been given on the ground of fraud, but no such question arose during the tenure of either Benjamin or his mother. Nor was the father a party to or aware at the time of the conveyance by Benjamin to his mother. The conveyance made by Benjamin with the approval of the other children and of the mother may have been and probably was under a mistaken view as to its possible effect, in case of the mother's death, but the father was not in anywise responsible for or connected with this mistake. The sole question is, therefore, whether the circumstances proved shows that at the time of this conveyance to the mother, there

was, as to this property, a trust in favor of the other children, existing by operation of law and continued after the conveyance, because the mother had notice of such trust. The original transaction of the conveyance from the father to Benjamin was itself an equivocal one, and as a family affair consistent either with the absolute conveyance by the father to Benjamin, or with the father's reservation of some future interest in it after the death of his wife. It appears that at the time of the conveyance, it constituted his entire property, and the intention to then convey it without any reservation should be very clearly made out, in order to divest him now of the estate for his life, devolving on him by law after the death of his wife, and as the result of an act determined on by the defendants themselves, with which he had nothing to do. This voluntary conveyance to the mother after the father had conveyed to Benjamin, followed by the loss or failure to produce the father's letter relating to the deed, inclines me to give defendant the benefit of any doubt as to the existence of a trust. And on this aspect of the case it is not irrelevant to notice that although the mother, after she was stricken with her fatal illness, executed a deed for the Springfield farm to her son Claudius, for the purpose of continuing the benefit of the property to the family, no deed was signed by her for the Orange property.

As to this property, therefore, the relief sought by the bill, an injunction against setting up title by the curtesy will be denied, but inasmuch as it appears by the evidence that a mortgage on this property for $350 has been paid off by the defendant from the proceeds of the farm, and has been canceled of record, this refusal will be without prejudice to any claim to reestablish the lien of this mortgage for his reimbursement, and I will hear counsel as to whether such relief can be given on this bill, or by amendment thereto.